IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| v. ) | Case No. 3:03-cr-00013-02 |
| ) | |
| **ROBBIE DIONTE OUTTERBRIDGE,** ) | By: Michael F. Urbanski |
| Defendant. ) | Chief United States District Judge |

**MEMORANDUM OPINION**

This matter comes before the court on defendant Robbie Dionte Outterbridge's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 690. The government opposes Outterbridge's motion. ECF No. 698. Outterbridge has also filed a supplemental motion, ECF No. 694; a reply, ECF No. 701; and a supplemental reply, ECF No. 703. Because the court finds that the 18 U.S.C. § 3553(a) factors weigh against release in this case, Outterbridge's motions are **DENIED**.

**I.**

On September 3, 2003, Outterbridge pleaded guilty pursuant to a Rule 11(c)(1)(C) plea agreement to conspiracy to possess and distribute cocaine, interstate travel to commit a crime of violence, interstate travel to commit murder, and use of a firearm in furtherance of these crimes. ECF No. 652. On March 31, 2005, Outterbridge was sentenced to 300 months of incarceration. ECF No. 650. Outterbridge has been in continuous custody since October 11, 2002, and has served more than three quarters of his sentence. ECF No. 694-4 at 1.

Outterbridge seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A), arguing that his various medical issues constitute "extraordinary and compelling" reasons warranting a

1

sentence reduction. Outterbridge suffers from type 2 diabetes mellitus, obesity, and asthma. Outterbridge asserts that "the extraordinary and compelling reasons . . . supporting [his] sentence reduction are the rampant spread of COVID-19 throughout the BOP, [his] high susceptibility to serious complications from the virus, and his inability to adequately protect himself from catching the virus given the restrictions he faces within the BOP." ECF No. 694-3 at 2. Outterbridge asks the court to reduce his sentence to time served. Id. at 17. The government opposes any sentence reduction for Outterbridge. ECF No. 698. This matter is fully briefed and ripe for disposition.[1]

**II**.

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act ("FSA"), authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

---

[1] The court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

Accordingly, Outterbridge's requested relief requires the court to consider (1) if he exhausted his administrative remedies; (2) if so, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence; and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors and whether Outterbridge is a danger to the safety of the community.

    i.    <u>The government waived the exhaustion requirement.</u>

The provision allowing defendants, in addition to the Bureau of Prisons (BOP), to bring motions under § 3582(c) was added by the FSA in order to "increas[e] the use and transparency of compassionate release." Pub. L. No. 115-391, 132 Stat. 5239 (2018). Before bringing the motion before the district court, a petitioner must first exhaust his administrative remedies. <u>See</u> 18 U.S.C. § 3582(c)(1)(A). A petitioner must satisfy one of two conditions, whichever is earlier: (i) "the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf" or (ii) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility[.]" <u>Id.</u> The first condition requires that the defendant fully exhaust all administrative rights. This means that it is not enough for the warden to respond within 30 days by denying the request for compassionate release. If the warden denies the request within 30 days, the petitioner must then exhaust all administrative appeals available through the BOP. The second condition can only be met after the lapse of 30 days from when the warden received the petitioner's request and has not responded.

Here, Outterbridge made a written request to the warden on May 22, 2020, requesting compassionate release. ECF No. 690-3 at 1. On May 29, 2020, the warden denied

Outterbridge's request and advised him that he could "appeal the denial through the Administrative Remedy procedure" if he was unsatisfied with the BOP's response. Id. at 2. Outterbridge filed his motion with this court 19 days later. ECF No. 690. It is not clear from the record that Outterbridge exhausted any administrative appeals available through the BOP. However, the government has not argued that Outterbridge failed to exhaust his administrative remedies. ECF No. 698. Indeed, its opposition does not mention the exhaustion requirement at all. See id. Accordingly, the court finds that, to the extent that Williams has not fully exhausted the available administrative appeals within the BOP, the government has waived the exhaustion requirement by failing to argue it in their opposition.

This court has previously found that the exhaustion requirement does not operate as a jurisdictional bar under § 3582(c)(1)(A). See United States v. Crawford, No. 2:03-cr-10084, 2020 WL 2537507, at *1 n.1 (W.D. Va. May 19, 2020). Because the exhaustion requirement is not jurisdictional, it operates as a claims-processing rule and can be waived. See e.g., Crawford, 2020 WL 2537507, at *1 (finding that the exhaustion requirement has been waived where the government failed to raise exhaustion as a ground for denying the motion); see also United States v. Alam, 960 F.3d 831, 834 (6th Cir. 2020) (holding that the exhaustion requirement is a mandatory claims-processing rule that has two exceptions: waiver and forfeiture) (citing United States v. Cotton, 535 U.S. 625, 630 (2002)); United States v. Russo, ___ F. Supp. 3d ___, 2020 WL 1862294, at *5 (S.D.N.Y. Apr. 14, 2020) ("one key consequence of [§ 3582(c)(1)(A)] not being jurisdictional is that the Government can waive the affirmative defense of exhaustion."). Accordingly, the court finds that the government has waived the exhaustion requirement by failing to argue it.

### ii.     Outterbridge presents extraordinary and compelling circumstances.

The court must next consider if it should "reduce the term of imprisonment." See 18 U.S.C. § 3582(c)(1)(A). The U.S. Sentencing Guidelines Manual ("USSG") § 1B1.13 application notes state that "extraordinary and compelling reasons" exist where (A) the defendant is suffering from a terminal or serious medical condition; (B) the defendant is over 65 years old, has failing health, and has served at least ten years or 75 percent of his sentence, whichever is less; (C) the caregiver of the defendant's minor child dies or becomes incapacitated, or the defendant's spouse or partner becomes incapacitated and the defendant is the only available caregiver; or (D) as determined by the Director of the BOP, for "other reasons" than, or in combination with, those described in Application Notes (A)-(C). Id. at cmt. n. 1(A)-(D).

The court finds that Outterbridge's underlying medical conditions, when paired with the COVID-19 pandemic, present "extraordinary and compelling reasons" to reduce his sentence under Application Note A. Id. at cmt. n. 1(A). "In the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." United States v. Harper, No. 7:18-cr-25, 2020 WL 2046381, at *3 (W.D. Va. Apr. 28, 2020) (citing United States v. Feiling, No. 3:19-cr-112, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020)).

Due to Outterbridge's medical conditions, he is more susceptible to COVID-19. The Centers for Disease Control and Prevention (CDC) has issued guidance on specific risk factors that place individuals at a higher risk of severe outcomes from COVID-19, including type 2

5

diabetes mellitus and obesity.[2] See Wilson v. United States, No. 2:11-cr-180, 2020 WL 3315995, at *3 (E.D. Va. June 18, 2020) ("When assessing compassionate release motions during the pandemic, the Court examines the [CDC's] list of risk factors for severe COVID-19 complications."). Here, Outterbridge suffers from type 2 diabetes mellitus, obesity, and asthma. In its brief in opposition, the government concedes that "Outterbridge's diabetes and obesity put him at higher risk for severe illness if he contracts COVID-19." ECF No. 698 at 10. The United States acknowledges that, "[t]hough during ordinary times Outterbridge's diabetes and obesity would not qualify as extraordinary and compelling under the FSA," Outterbridge's medical conditions present an exceptional and compelling circumstance in the context of the COVID-19 pandemic. Id. The court agrees with the parties and finds that Outterbridge has demonstrated extraordinary and compelling reasons exist warranting a reduction in his sentence.

    iii.    <u>Outterbridge is a danger to the safety of the community and a sentence reduction is inappropriate after considering the § 3553(a) factors.</u>

Having found that extraordinary and compelling reasons exist to warrant a reduction in Outterbridge's sentence, the court must consider if Outterbridge is a danger to the safety of anyone else or the community and if a sentence reduction is consistent with the applicable § 3553(a) factors. See 18 U.S.C. § 3582(c)(1)(A); USSG § 1B1.13(2). Pursuant to § 1B1.13(2),

---

[2] Centers for Disease Control and Prevention, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated Sept. 11, 2020). The CDC also notes that asthma "might" put an individual at an increased risk for severe illness from COVID-19, id., and that "[l]ong-standing systemic health and social inequities have put some members of racial and ethic minority groups at increased risk of COVID-19 or experiencing severe illness, regardless of age." Centers for Disease Control and Prevention, COVID-19 in Racial and Ethnic Minority Groups, https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/race-ethnicity.html (updated July 24, 2020).

the court must consider the 18 U.S.C. § 3142(g) factors in determining whether Outterbridge is a danger to the safety of any other person or to the community. The relevant factors include "the nature and circumstances of the offense charged"; "the history and characteristics of the person," including "the person's character, physical and mental condition, family ties, . . . community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history"; and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." See United States v. Rodriguez, 451 F. Supp. 3d 392, 406 (E.D. Pa. 2020).

Outterbridge pleaded guilty to conduct associated with murder. ECF No. 706 at ¶¶ 1–2. Outterbridge and his three co-defendants travelled from Washington, D.C., to Albemarle County, Virginia, with the intent to rob and murder an individual for drugs and money. Id. at ¶ 6. On the way to the murder, Outterbridge and his co-defendants committed two other unrelated robberies of another drug dealer and of a couple at an ATM. Id. Once in Albemarle, after watching his co-defendants shoot their victim in the thigh and stab him repeatedly, Outterbridge shot him in the head to confirm his death. Id. Before this incident, Outterbridge already had a history of larceny, drug use, and assault. Id. at ¶¶ 38–40. During his incarceration, Outterbridge has incurred several disciplinary infractions, albeit not since 2015. ECF No. 701-3 at 3. Accordingly, the court finds that Outterbridge is a danger to the community and no terms of home confinement could ensure Outterbridge's compliance with the court's orders.

The court must also consider if a sentence reduction is consistent with the applicable § 3553(a) factors. See 18 U.S.C. § 3582(c)(1)(A). Those factors include: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for

7

the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. See 18 U.S.C. § 3553(a). Here, the § 3553(a) factors weigh in favor of continued incarceration.

As discussed above, Outterbridge pleaded guilty to his involvement in a murder for drugs and money. Outterbridge's pre-sentence report calculated his offense level as 42 and his criminal history as category II, based on prior convictions. ECF No. 706 at ¶¶ 12–36, 41–42. Outterbridge could have been sent to prison for the rest of his life. Id. at ¶¶ 55–56. Instead, the court imposed a below-guidelines sentence of 300 months. ECF No. 652. The court also considers the need to afford specific and general deterrence, as just punishment is necessary to deter both Outterbridge's and other individuals' future involvement in violent crimes.

While the court is sympathetic to Outterbridge's medical conditions and concerned about the outbreak of COVID-19 cases at his institution, ECF No. 705, it cannot release him until he serves his full sentence for his serious and violent crimes. Accordingly, the court finds that the § 3553(a) factors weigh against a reduction in Outterbridge's sentence.

### III.

For the reasons stated herein, the court **DENIES** Outterbridge's motions for compassionate release, ECF Nos. 690, 694-3. The clerk is directed to send a copy of this memorandum opinion and accompanying order to the petitioner, his counsel of record, and the United States. An appropriate order will be entered.

It is so **ORDERED**.

Entered: October 9, 2020

Michael F. Urbanski
Chief U.S. District Judge
2020.10.09 17:26:13
-04'00'

Michael F. Urbanski
Chief United States District Judge

9